IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARSHALL HARRISON,** | : Civil No. 1:20-CV-01200 |
| **Plaintiff,** | : |
| v. | : |
| **LAZER SPOT, INC.,** | : |
| **Defendant.** | : Judge Sylvia H. Rambo |

# M E M O R A N D U M

Before the court is Defendant Lazer Spot, Inc.'s motion for summary judgment. (Doc. 17.) For the reasons that follow, the motion will be granted in part and denied in part.

## I.   BACKGROUND

This case arises from Plaintiff Marshall Harrison's employment by Lazer Spot, Inc. ("Lazer Spot"). Lazer Spot is a national provider of transportation and yard management services, and its business includes spotting, or moving loaded and empty trailers between two or more points, and shuttling, or transporting loaded or unloaded trailers over public roads to and from the client's facility. (Doc. 19 ¶ 2.) The company is licensed as a federal motor carrier by the United States Department of Transportation ("DOT") and maintains the DOT registration required for companies that transport passengers or property by commercial vehicle in interstate commerce. (*Id.* ¶¶ 1, 3.)

1

Lazer Spot employed Mr. Harrison as a driver from December 1, 2015 until February 7, 2020. (Doc. 19 ¶ 6; Doc. 20-2 at 2.) Lazer Spot's policy permitted it to deploy Mr. Harrison to any of its eighteen clients within 100 miles of its Carlisle, Pennsylvania office, but Mr. Harrison was regularly assigned to work at distribution centers for two of Lazer Spot's clients, the Hershey Company and General Mills.[1] (Doc. 19 ¶¶ 18, 19, 26; Doc. 19-2 at 34:10–35:15.)

Both distribution centers were located in Palmyra, Pennsylvania and were used to receive finished goods and coordinate their delivery and transportation to surrounding states. (Doc. 19 ¶ 34.) The Hershey Company's distribution center, for example, received finished candy goods from the company's manufacturing facility in Hershey, Pennsylvania, and facilitated their subsequent transportation by tractor trailer to various national retailers located in Virginia, Ohio, Maryland, and Connecticut. (*Id.* ¶¶ 35–38.) The candy was typically sent out within hours or days of its receipt at the distribution center, which played no role in the manufacturing process. (*Id.* ¶¶ 39–40.) Similarly, the General Mills distribution center was used to receive finished goods manufactured outside of Pennsylvania, including in New York and Tennessee, and to coordinate their distribution and transportation by

---

[1] On three dates, spanning from 2016 to 2017 and comprising seven hours, Mr. Harrison trained at the Nestlé Purina site in Mechanicsburg, PA, where he drove loaded trailers on Brackbill Boulevard, a public road. (Doc. 19 ¶ 27; Doc. 19-2 at 29:7–20.) Mr. Harrison also worked at Bridgestone, but Lazer Spot does not contend his activities there supported his exemption. (Doc. 19-2 at 34:18–20; *see generally* Docs. 18, 19, 21.)

2

tractor trailer to national retailers located in Virginia, Ohio, Maryland, and Connecticut. (*Id.* ¶¶ 41–44.)

Mr. Harrison drove primarily as a yard jockey, moving trailers within the storage yard to facilitate pickup by the drivers who would transport the goods out of state. (Doc. 19-2 at 32:7–15.) He was required to hold a commercial driver's license, possess a clean driving record, pass a DOT physical and a road test, and complete safety training for new drivers. (Doc. 19 ¶¶ 8, 11.) As with all Lazer Spot drivers, Mr. Harrison's driving record was monitored annually, and he was required to complete quarterly safety training, maintain DOT compliant licensing and medical certification, and undergo random DOT drug testing.[2] (*Id.* ¶¶ 12, 15, 16.)

Mr. Harrison often worked six days per week, frequently clocking more than forty hours in a week. (*See, e.g.*, Doc. 19-35.) When his managers Mr. Dundore and Mr. Mullen asked him to perform extra duties, Mr. Harrison would ask them: "When are they going to start paying us overtime? Why are they not paying me overtime? I'm not a truck driver" and "if you want me to do this, come into this or do this for you, why don't you pay me extra?"[3] (Doc. 19 ¶ 63.) Mr. Harrison could not

---

[2] Additionally, Lazer Spot compelled its truck drivers to conduct a safety inspection before operating vehicles or other equipment, conditioned their employment on having no serious moving violation citations, and prescribed annual safety certifications. (Doc. 19 ¶¶ 13, 14, 16.) Lazer Spot's trucks are licensed, insured, and tagged to pass annual DOT inspections. *(Id.* ¶¶ 4–5.)

[3] In his deposition, Mr. Harrison testified that he additionally complained to human resources, but he later testified that the only two people he spoke to about overtime were his two managers. (Doc. 19-2 at 80:25–81:10, 83:1–11.)

approximate any of the dates on which he complained. (Doc. 19-2 at 81:11–23.) Lazer Spot's employee handbook, which Mr. Harrison both signed and testified that he read, cites to the Motor Carrier Exemption, 29 U.S.C. § 213(b), to explain why employees are not paid time-and-a-half for hours worked beyond forty per week. (Doc. 19-40 at 28, 28; Doc. 19-2 at 30:6–31:4.)

The employee handbook also provides that Lazer Spot will write up an employee who misses work without notice, treat an employee as having resigned for missing two or more consecutive days without notice, and terminate an employee for three write-ups within twelve months. (Doc. 19 ¶¶ 54–56.) It is undisputed that Lazer Spot enforced these policies, having terminated at least six other employees in the Carlisle area between 2017 and 2020 for having three write-ups within twelve months. (Doc. 19 ¶¶ 57–58; Doc. 19-41.)

On January 30, 2020, Lazer Spot informed Mr. Harrison that he was being terminated for receiving three write-ups within one year. (Doc. 19 ¶¶ 73–74; Doc. 19-38.) Mr. Harrison was written up for missing work without notice on October 28, 2019 and January 27–28, 2020. (Docs. 19-34, 19-37.) He could not recall in his deposition whether he had failed to call off or even had missed those days of work, but he testified it was not his practice to miss work without calling off and suggested that Mr. Dundore had a habit of forgetting when employees provided proper notice. (Doc. 19-2 at 76:2–79:21.)

Mr. Harrison initiated this action by filing a complaint on July 14, 2020, alleging that Lazer Spot failed to pay him overtime as required by the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act, that it failed to pay his wages on regular designated paydays under the Pennsylvania Wage Payment and Collection Law, and that it terminated him in retaliation for complaining about FLSA violations. (Doc. 1.) Lazer Spot now moves for summary judgment on all claims. (Doc. 17.) The motion has been fully briefed and is ripe for review.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d

229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

### III. DISCUSSION

**A. Lazer Spot is not entitled to summary judgment on Mr. Harrison's claims for unpaid overtime wages.**

Lazer Spot requests summary judgment on Mr. Harrison's claims for overtime wages, alleging he is exempt from FLSA overtime pay requirements under the motor carrier exemption ("MCE").[4] The FLSA "requires employers to pay overtime compensation to employees who work more than forty hours per week, unless one or another of certain exemptions applies." *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005); 29 U.S.C. § 207(a)(1). Congress carved out various categorical exemptions to the FLSA overtime pay requirement, including the MCE, which applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Pursuant to Section 31502, motor carriers performing interstate transportation of passengers or property are exempt from this regulation by United States Department

---

[4] The court analyzes Mr. Harrison's claim under the Pennsylvania Minimum Wage Act ("PMWA") simultaneously because the parties agree that identical principles govern MCE analysis under the PMWA and FLSA. (Doc. 18 at 22–23; Doc. 20-2.) *See also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.4 (3d Cir. 2015).

of Labor ("DOL"), in order to preserve DOT's jurisdiction to regulate safety in transportation. *Resch*, 785 F.3d at 872.

An employee meets the MCE if his employer is subject to DOT jurisdiction and he "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a); *Resch*, 785 F.3d at 872. The second element, here at issue, is further interpreted in applicable regulations:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of [a driver, driver's helper, loader, or mechanic], he comes within the exemption in all workweeks when he is employed at such job.

29 C.F.R. § 782.2(b)(3); *see also* Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902-02, 37,903 (July 23, 1981) ("DOT Notice") (establishing DOT jurisdiction "over drivers only where the employees regularly travel interstate or are reasonably expected to do interstate driving").

In analyzing the employee's activities, courts focus on "the character of the activities" rather than the employee's title or the proportion of time he devotes to them. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 673 (1947); *see* 29 C.F.R. § 782.2(b)(2); *Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 206 (5th Cir. 2018) (noting that courts do not quantify "how frequently employees must engage

8

in the sort of work that would qualify for the [MCE]"). However, evidence of interstate driving does not subject an employee to DOT jurisdiction "for an unlimited period."[5] DOT Notice, 46 Fed. Reg. at 37,903. The DOL and most courts have adopted the DOT's four-month-rule that "[e]vidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to [DOT jurisdiction] for a 4-month period from the date of the proof."[6] *Harrison v. Delguerico's Wrecking & Salvage, Inc.*, No. 13-CV-5353, 2016 WL 3213347, at *4 (E.D. Pa. June 10, 2016) (citing DOT Notice, 46 Fed. Reg. at 37,903); *Badgett v. Rent-Way, Inc.*, 350 F. Supp. 2d 642, 657 (W.D. Pa. 2004).

Under the MCE, an employee drives interstate not only by transporting goods across state lines but also by transporting goods on intrastate public roads as long as

---

[5] Similarly, the de minimis exception to the MCE removes from DOT jurisdiction employees whose "continuing duties" only have an impact on safety "so trivial, casual, and insignificant as to be de minimis." *See* 29 C.F.R. § 782.2(b)(3) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707–08 (1947)). Although drivers "seldom, if ever, fall within [the exception]," its existence demonstrates that the MCE requires that the employee's duties have some minimal impact on safety. *See Resch*, 785 F.3d at 875.

[6] Lazer Spot argues that the four-month rule is inapplicable because it is based only on the carrier's interstate activities, but this interpretation would eviscerate the rule's purpose. Like the MCE itself, the four-month rule depends not only on the carrier's interstate activities but also the character of the employee's activities. *See* DOT Notice, 46 Fed. Reg. at 37,903 ("If jurisdiction is claimed over a driver who has not driven in interstate commerce [in that four-month period], evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs."). Thus, Lazer Spot must demonstrate not only that it engaged in interstate commerce within every four-month period but also that Mr. Harrison either participated in that activity or could reasonably have been expected to do so.

the goods themselves are in interstate commerce.[7] *See* 29 C.F.R. § 782.7(b)(1); *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 791 (3d Cir. 2016). In contrast, employees are not exempt "merely because they engage in activities affecting the safety of operation of motor vehicles operated on private premises." 29 C.F.R. § 782.2(e).

An employee may also come within the MCE "even if the driver has not personally driven in interstate commerce if, because of company policy and activity, the driver could reasonably be expected to do interstate driving." DOT Notice, 46 Fed. Reg. at 37,903. An employee is not exempt, however, if "there is no possibility of the individual driver doing interstate driving or the possibility of interstate driving is remote." *Id.*; *see also Resch*, 785 F.3d at 873 (analyzing "'the class of work' performed by the employees occupying the same position . . . and the likelihood of the employer distributing those duties among the employees in question"). The employer bears the burden of proving the exemption. *Resch*, 785 F.3d at 872; *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

Here, Lazer Spot is not entitled to summary judgment on Mr. Harrison's overtime claims because it has not demonstrated that he transported goods in interstate commerce as part of his regular duties, and because an issue of fact remains

---

[7] For ease of reference, the court uses variations of the phrase "interstate driving" to describe any transportation by motor vehicle over public roads of goods that are in interstate commerce.

as to whether he was reasonably expected to be called on to do so.[8] The record indicates that Mr. Harrison rarely, if ever, drove goods interstate or intrastate as part of his employment duties.[9] The documents submitted by Lazer Spot show only that Mr. Harrison transported goods over public roads during his initial training with the company. (Doc. 19 ¶ 27.) The training lasted three days and did not require Mr. Harrison to cross state lines. (Doc. 19-31.) While even this limited activity constitutes interstate driving for purposes of the MCE, it does not establish as a matter of law that Mr. Harrison was subject to the exemption for the duration of his employment. The driving occurred several years before Mr. Harrison was terminated by Lazer Spot and was undertaken for the discrete purpose of training Mr. Harrison rather than in the ordinary course of his employment. It does not preclude a reasonable jury from finding that Mr. Harrison's post-training employment was of a different character that takes him outside the motor-carrier exemption and subjects

---

[8] Mr. Harrison does not contest that Lazer Spot is a motor carrier subject to DOT jurisdiction and the undisputed facts readily establish it. The DOT has jurisdiction over motor carriers, which are defined as persons "providing motor vehicle transportation for compensation." 49 U.S.C. §§ 31502(b), 13102(14). Lazer Spot is a DOT-licensed motor carrier and maintains DOT registration to transport property by motor vehicle in interstate commerce. (Doc. 19 ¶¶ 1, 3.) Additionally, Lazer Spot's customers pay Lazer Spot to provide transportation and yard management services. (*Id.* ¶ 2.)

[9] Drawing inferences in favor of the non-movant, Mr. Harrison's admission that he moved goods "at the customers' yards or on public roads like Brackbill Boulevard that were just right around the customers' locations" admits no more than that he drove on Brackbill Boulevard. (Doc. 19-2 at 33:10–15.) Mr. Harrison's admission that he drove between the Hershey and General Mills sites to re-fuel does not establish that he drove goods interstate. (Doc. 19-2 at 41:7–18.) Mr. Harrison did not drive on public roads between the Hershey distribution center and the auxiliary lot. (Doc. 19-2 at 37:20–38:3.)

Lazer Spot to the overtime laws. *See Buscarino v. TQ Logistics, Inc.*, No. CIV.A. 08-CV-3882, 2010 WL 3211708, at *6 (D.S.C. Aug. 11, 2010) (declining to find spotters exempt based on a single episode of driving interstate); *Roberts v. Cowan Distrib. Servs., LLC*, 58 F. Supp. 3d 593, 602–03 (E.D. Va. 2014) (finding a driver non-exempt because he had not driven goods in interstate commerce over public roads for three consecutive years).

Additionally, a fact issue remains as to whether Mr. Harrison was reasonably expected to engage in interstate driving. The Third Circuit has outlined various factors to consider in determining whether an employee has a reasonable expectation of driving interstate, including whether the carrier-employer is engaged in any interstate business, whether the employer assigns drivers randomly to that driving, and whether it maintains a company policy and activity of interstate driving. *Resch*, 785 F.3d at 874–75 (internal quotation marks omitted). In *Resch*, the court applied these factors to find that the plaintiffs, who were employed as coach bus drivers, had a reasonable expectation of driving interstate where 6.9% of the company's driving trips were interstate, 9.7% of the division's annual revenue was from interstate trips, the company operated at least one interstate trip each month, and the company's policy was to train drivers on as many routes as possible and assign them to any routes on which they trained. *Id.* at 874. The court also noted the employer's

adherence to federal motor carrier regulations and communication of safety expectations in employment paperwork. *Id.* at 874–75.

Here, a fact issue remains as to whether Mr. Harrison was reasonably expected to drive interstate because, in contrast to *Resch*, the record is silent with respect to the quantity of Lazer Spot's business that was devoted to interstate transportation and the likelihood that Mr. Harrison would be called on to drive interstate. Lazer Spot's motion does not approximate the frequency with which its employees transported goods interstate or the revenue that was generated from such business. There is no indication that the company regularly assigned interstate driving trips to Mr. Harrison's similarly situated colleagues, and Mr. Harrison's personal experience of driving four years with Lazer Spot belies the notion that he was reasonably expected to drive interstate. While Lazer Spot does proffer evidence that it retained discretion to assign Mr. Harrison to any of its locations and discipline him for refusing a placement, the mere possibility of reassignment does not establish a reasonable expectation of interstate driving for purposes of summary judgment. Similarly, Lazer Spot's safety protocols, DOT compliance, and employment paperwork for Mr. Harrison favor finding a reasonable expectation of interstate transportation, but are not dispositive in the absence of evidence to support the core *Resch* factors that probe the likelihood of an assignment to interstate transportation.

On this record, Lazer Spot has not carried its burden to show Mr. Harrison's bona fide and "continuing duties" created a reasonable expectation of being called upon to drive interstate.[10] *See, e.g.*, *Johnson*, 651 F.3d at 663; *Harrison*, 2016 WL 3213347, at *6.[11] As such, Lazer Spot is not entitled to summary judgment on Mr. Harrison's claims for overtime wages.

### B. Lazer Spot is entitled to summary judgment on Mr. Harrison's FLSA retaliation claim.

Lazer Spot also requests summary judgment on Mr. Harrison's FLSA retaliation claim. The FLSA prohibits employers from "discharg[ing] or discriminat[ing] against an employee because such employee has filed any complaint" alleging FLSA violations. 29 U.S.C. § 215(a)(3). Retaliation claims under the FLSA apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002). First, the plaintiff must establish a prima facie retaliation claim by showing that (1) he engaged in a protected activity; (2) he

---

[10] Lazer Spot urges the court to rely on two non-binding cases in which Lazer Spot drivers were found exempt. *Bolar* is readily distinguishable, however, because it involved plaintiffs who drove goods over public roads on a daily or monthly basis. *Bolar v. Southern Intermodal Xpress*, No. 1:17-00360, 2019 WL 4738792, at *10–11, *14 (S.D. Ala. Sept. 27, 2019). The facts in *Featherston* also do not suggest that the plaintiff worked any substantial period without driving goods in interstate commerce over public roads. *See Featherston v. Lazer Spot, Inc.*, No. 2:17-cv-01221, 2018 WL 4088001 (D. Nev. Aug. 27, 2018).

[11] Mr. Harrison's PWPCL claim derives solely from his FLSA claim and thus rises and falls on his entitlement to overtime pay. *See Scully v. US WATS, Inc.*, 238 F.3d 497, 516–17 (3d Cir. 2001) ("[P]WPCL does not create a new right to compensation, but rather, merely establishes a right to enforce payment."). Thus, the motion for summary judgment on this claim will also be denied.

suffered employment action; and (3) a causal nexus existed between the protected activity and the employer's adverse action. *See Garner v. Phila. Hous. Auth.*, No. 15-183, 2016 WL 4430639, at *14 (E.D. Pa. Aug. 22, 2016). Causation may be established by unusually suggestive timing or inferred from "a pattern of ongoing antagonism, inconsistencies in the employer's justifications, or any other 'evidence gleaned from the record as a whole' that is sufficient to support an inference of retaliatory animus.'" *Holt v. Pennsylvania*, 683 F. App'x 151, 157 (3d Cir. 2017); *see Jalil v. Avdel*, 873 F.2d 701, 708 (3d Cir. 1989) (finding causal link when plaintiff was terminated two days after engaging in protected activity).

If the plaintiff establishes a prima facie claim, the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for its action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Finally, if the defendant meets its burden, the plaintiff must prove that its proffered reason is pretext by pointing to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Cononie*, 29 F. App'x at 95 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, Lazer Spot is entitled to summary judgment on Mr. Harrison's FLSA retaliation claim because there is no evidence to support a causal connection between

any protected activity and an adverse employment action. While Mr. Harrison arguably engaged in a protected activity by complaining about a lack of overtime when his supervisors asked him to perform extra duties, he cannot establish a causal connection between his complaint and subsequent termination. Mr. Harrison cannot rely on timing alone to establish a causal connection because he testified that he did not remember when he last complained to his managers prior to being terminated. (*See* Doc. 19 ¶ 64.) In addition, while Mr. Harrison contends in his brief that his termination was unjustified because he did not violate Lazer Spot's policies, his deposition testimony on the issue is ambivalent at best. (Doc. 19-2 at 76:2–79:21.) Mr. Harrison does not offer any additional evidence to support a causal connection between his complaints and termination, and contrary to his contentions, the write-ups cited in his termination letter indicate a progressive disciplinary process, consistent with the company policies and enforcement practices. (Docs. 19-34, 19-37, 19-38.) Mr. Dundore testified that Lazer Spot did not consider Mr. Harrison's complaints in deciding to terminate him, and nothing in the record indicates otherwise. (Doc. 19-23 ¶ 57.) Because Mr. Harrison does not raise a triable issue of fact as to whether his protected activity caused his termination, his FLSA retaliation claim fails as a matter of law and Lazer Spot is entitled to summary judgment.[12]

---

[12] Assuming that Mr. Harrison could establish causation, his claim would nevertheless fail because he does not offer evidence to support a finding that Lazer Spot's proffered reason was pretext. Mr. Harrison does not dispute that Lazer Spot evenly enforced its attendance policy and terminated

## IV. CONCLUSION

For the reasons explained above, the court will grant in part and deny in part Defendant Lazer Spot's motion for summary judgment. An appropriate order shall follow.

_s/Sylvia H. Rambo_  
SYLVIA H. RAMBO  
United States District Judge

Dated: December 14, 2021

---

employees for receiving three write-ups within one year (Doc. 19 ¶¶ 53–62), and his contrary to his arguments, it is not material that Mr. Dundore told Mr. Harrison they were meeting to discuss his annual raise or that Mr. Harrison failed to sign the January write-ups or termination slip during their conversation. (Doc. 20-2 at 8–10.) In the context of this record, these facts do not support a finding of pretext.